## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| VANTAGE DRILLING COMPANY, | § | |
| | § | |
| Plaintiff | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:12-CV-03131 |
| | § | |
| HSIN-CHI-SU A/K/A NOBU SU, | § | |
| | § | |
| Defendant. | § | |
| | § | |
| | § | |

## DEFENDANT'S MOTION FOR LEAVE
## TO CONDUCT EXPEDITED DISCOVERY

1.      Defendant Hsin-Chi-Su, aka Nobu Su ("Su") respectfully moves for leave to conduct expedited discovery in order to protect his rights at the upcoming Extraordinary General Meeting in Lieu of Annual General Meeting (the "Meeting") of Vantage Drilling Company ("Vantage" or "the Company") on March 18, 2013, a matter intricately related to the suit at hand and Vantage's Motion for Leave to Conduct Expedited Discovery [DE 17] (the "Vantage Motion") filed February 26 and granted March 1 [DE 19].[1] Su also seeks expedited discovery relating to certain documents relied upon by Vantage in the Vantage Motion.

2.      The discovery sought by this motion, by way of oral deposition and document requests, is limited to matters involving (i) Vantage's recent wrongful actions diluting the percentage ownership in Vantage (and thus percentage vote at the Meeting) held by Su's company, F3 Capital; (ii) the good faith basis, if any, for Vantage's actions to preclude two director nominees from being considered at the Meeting; and (iii) Exhibit 12 to the Vantage Motion.

---

[1] The Vantage Motion was granted before the submission date and before a response.

1

3.      In contracts that have been made public in Vantage's filings with the SEC, Su, through his company, F3 Capital, bargained for (i) the right to maintain his percentage ownership and the right to nominate as many as four directors, subject only to a "good faith" review of qualification to serve; and (ii) that "in the event of any proposed issuance or offering by Vantage of ordinary shares," Vantage "shall" provide notice "prior to the commencement of such proposed issuance or offering" and "shall" grant an option to F3 Capital to "subscribe for up to 34.6%" of ordinary shares to be issued by Vantage. *See* [DE 17-7]; Ex. 1, Letter Agreement (as attached to Vantage's March 20, 2012 8-K as Exhibit 10.3) (emphasis added).[2]

4.      Based on Vantage's public filings, Su has reason to believe that Vantage is in breach of the March 20, 2012 Letter Agreement. Specifically, according to Item 3.02 of Vantage's December 2012 8-K, attached here as Exhibit 2, Vantage issued 5,000,000 ordinary shares to Tomdrill Corp. as follows:

**Item 3.02.  Unregistered Sales of Equity Securities**

On December 10, 2012, Vantage Drilling Company ("Vantage") issued 5,000,000 ordinary shares, $0.001 par value (the "Shares"), to Tomdrill Corp. pursuant to an agreement whereby Vantage's agent elected to receive a set number of Vantage shares in exchange for a reduction in the cash consideration that would have otherwise been payable over the term of Vantage's eight year drilling contract for the ultra-deepwater drillship Titanium Explorer. As a result of the share issuance, the cash consideration that would have otherwise been payable to Vantage's agents over the term of the contract has been reduced by approximately $10 million.

The Shares were not subject to issuance until acceptance of the Titanium Explorer for commencement of operations by Vantage's client, which occurred on December 7, 2012.

The Shares were issued pursuant to an exemption from registration under Section 4(2) of the Securities Act of 1933, as amended (the "Act"), and Rule 144 promulgated under the Act.

---

[2]Pursuant to the March 20, 2012 Undertaking Letter of Vantage Drilling attached as Exhibit 10.3 to Vantage's March 20, 2012 8-K and attached to this motion as Exhibit 1 (the "Letter Agreement"), Vantage contracted that "in the event of any proposed issuance or offering by Vantage of ordinary shares [excepting an employee benefit plan approved distribution] at any time prior to the date falling 12 months after the date hereof, Vantage shall: (A) give written notice to F3 Capital immediately… and in any event no less than 10 Business Days prior to the commencement of such proposed issuance or offering; (B) grant…an option to F3 Capital to subscribe for up to 34.6% [subject to adjustments if F3 owned a smaller percentage at the time of proposed issuance]." Section (d) of the Letter Agreement requires written notice to F3 Capital c/o Campbell Corporate Services Limited. Ex. 1.

5.      No prior notice and opportunity to subscribe was provided by Vantage as required by the Letter Agreement. Accordingly, Vantage has diluted F3's ownership and voting rights in advance of the Meeting, with the likely aim of preventing Su from fully exercising at the Meeting the voting rights to which his company is entitled. Su is thus entitled to conduct discovery to confirm that Vantage issued these shares without notice and to determine why Vantage has diluted Su's ownership and vote in advance of the Meeting.

6.      Because the Meeting is less than two weeks away, Su will be unable to adequately protect his interests if he is not permitted expedited discovery into Vantage's stock issuances during the effective period of the Letter Agreement in order to seek a remedy for the wrongful dilution of F3's ownership and voting interest in Vantage.

7.      Additionally, pursuant to the Voting Agreement (attached as Exhibit 10.2 to Vantage's March 20, 2012 8-K, the "Voting Agreement"), Su was entitled to nominate up to four people for the position of director at Vantage to be voted on at the Meeting. [DE 17-7, p. 3]. In response to Vantage's January 15, 2013 letter inviting F3 to submit nominees (attached as Exhibit 3), on February 1, 2013, Su exercised this right by submitting to Vantage's Nominating and Corporate Governance Committee (the "Committee") the names of Messrs. Randall D. Stilley and Keith M. Meyer as his two nominees for available director positions. This is undisputed and confirmed in Vantage's February 18 letter. Ex. 4. Mr. Stilley has served on public company boards (Seahawk Drilling and Hercules Offshore) and has served as a Senior executive of many notable companies including Halliburton Company, Weatherford (President, Oilfield Services), Hercules Offshore (President, CEO and Director), and Seahawk Drilling (President, CEO and Director), among others. His resume is attached to the Vantage Motion.

[DE 17-19, pp. 5-8]. Mr. Meyer has 32 years experience in the global energy industry. His resume is also attached to the Vantage Motion. [DE 17-19, pp. 11-16].

8.     On February 18, Vantage wrote by facsimile that the Committee "was unable to find" either candidate qualified. Ex. 4. Under the Voting Agreement attached to the Vantage Motion, the Committee must make its determination "in good faith." [DE 17-7, p. 3]. No explanation suggesting any good faith basis was provided. The members of the Committee believed to be involved in making the decision are Jorge Estrada, Robert Grantham, Duke Ligon, and Steinar Thomassen. The Voting Agreement specifically provides that the Shareholder does not have to vote for the slate of directors proposed by Vantage where the Shareholder can "affirmatively demonstrate that the… Committee did not fulfill its obligations under this Section 2(b)." *Id.*

9.     Because the Meeting is less than two weeks away, Su must act quickly to preserve his rights and ensure that his vote is not wrongfully diluted and his director nominees withheld from the vote. Both the Voting Agreement and the Letter Agreement provide that each party submits to the jurisdiction of the federal court in Harris County, Texas. The Letter Agreement further provides that the parties agree that if any provisions of the agreement were not performed in accordance with their specific terms or were otherwise breached, irreparable harm would occur. *See* Ex. 1, p. 3.

10.     Finally, the Vantage Motion was premised, in part, on a document attached to the Vantage Motion as Exhibit 12, which appears to be an incomplete copy of an email chain. For example, while Vantage's Exhibit 12 appears to be part of an email chain from Robert Gray to Su, the confidentiality legend at the bottom is from Marwyn Capital, a company associated with Benjamin Shaw, and there is no confidentiality legend from Robert Gray's law firm. Because

Vantage has raised the issue of communications with Mr. Shaw, who had previously contracted to do work for Su and F3, Su requests that Vantage produce a complete copy of this document and any other communications between Vantage and Mr. Shaw or his company, Marwyn Capital.

11.     The Court has broad authority under the Federal Rules of Civil Procedure to manage the discovery process, and the court may order expedited discovery if there is some showing of good cause to justify the order. *See El Pollo Loco, S.A. de C.V. v. El Pollo Loco, Inc.*, 344 F.Supp.2d 986, 991 (S.D. Tex. 2004) (citation omitted). Indeed, on March 4, the Court granted the Vantage Motion, filed on February 26.

12.      Because good cause exists and discovery is immediately necessary to prevent substantial harm to Su's interests, Su requests that the Court grant his Motion for Leave to Conduct Expedited Discovery.

13.     For the reasons stated above, Su respectfully requests that the Court grant him leave to conduct expedited depositions, occurring before the Meeting, on a date and time to be agreed upon by counsel, of the following individuals on the following topics:

**Witness: Vantage Drilling Company, by 30(b)(6) designee**

**Topic/Scope:** As fully set forth in Exhibit 5, this deposition will focus on (1) Vantage's issuance of shares without notice under the Letter Agreement, and (2) the rejection of director nominees Messrs. Randall D. Stilley and Keith M. Meyer.

**Witnesses: Jorge Estrada, Robert Grantham, Duke Ligon, and Steinar Thomassen**

**Topic/Scope:** As fully set forth in Exhibit 5, these depositions will focus on the Committee's rejection of Messrs. Randall D. Stilley and Keith M. Meyer.

5

14.     Su also requests that the Court grant him leave to serve the limited document requests attached as part of Exhibit 5.

Respectfully Submitted,

By: */s/ Mark D. Manela*_____
    Mark D. Manela
    State Bar No. 12894500
    Southern District No. 1821
    MAYER BROWN, LLP
    700 Louisiana, Suite 3400
    Houston, Texas 77002-2730
    Tel. (713) 238-3000
    Fax (713) 238-4888
    mmanela@mayerbrown.com

    ATTORNEY-IN-CHARGE FOR
    DEFENDANT HSIN-CHI-SU
    A/K/A NOBU SU

OF COUNSEL:

Jessica L. Crutcher
State Bar No. 24055367
Southern District No. 675607
Quinncy McNeal
State Bar No. 24074690
Southern District No. 12502065
MAYER BROWN, LLP
700 Louisiana, Suite 3400
Houston, Texas 77002-2730
Tel. (713) 238-3000
Fax (713) 238-4888
jcrutcher@mayerbrown.com
qmcneal@mayerbrown.com

6

## CERTIFICATE OF SERVICE

I certify that on March 8, 2013, I electronically filed the foregoing Defendant's Motion for Leave to Conduct Expedited Discovery with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record who have consented to electronic notification, and further served the foregoing Motion upon the following counsel of record by facsimile:

Robin C. Gibbs
David Sheeren
Gibbs & Bruns, LLP
1100 Louisiana, Ste. 5300
Houston, TX 77002

Richard W. Mithoff
Sherie P. Beckman
Warner Hocker
Mithoff Law Firm
500 Dallas St., Ste. 3450
Houston, TX 77002

*/s/ Jessica L. Crutcher*_____
Jessica L. Crutcher