UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| VANTAGE DRILLING COMPANY,<br><br>Plaintiff<br><br>v.<br><br>HSIN-CHI-SU A/K/A NOBU SU,<br><br>Defendant. | § § § § § § § § § § § § CIVIL ACTION NO. 4:12-CV-03131 |

**SU'S MOTION TO DISMISS**

Defendant Su brings this Motion to Dismiss under Federal Rules of Civil Procedure 12(b)(6), 9(b), and Tex. Civ. Prac. & Rem. Code § 16.003(a).

Vantage makes claims against Su for negligent misrepresentation, breach of fiduciary duty, unjust enrichment, fraud, and fraudulent inducement. Each claim should be dismissed because Vantage has failed to state a claim upon which relief could be granted.

Vantage's claims for negligent misrepresentation and unjust enrichment are time barred under the relevant statutes of limitations. The Amended and Restated Memorandum and Articles of Association of Vantage Drilling Company expressly bar non-fraud claims against directors. Vantage's unjust enrichment claim fails because no unjust enrichment claim may stand where—as here—Vantage has other adequate remedies at law. Vantage is a publicly traded company whose stock is listed on the American Stock Exchange, and its admissions in its SEC filings negate, as a matter of law, each of its claims.  Finally, Vantage's fraud, fraudulent inducement, and negligent misrepresentation claims fail to meet Rule 12(b)(6) and 9(b) pleading standards.

1

**DISCUSSION AND ARGUMENT**

**A.     Vantage's claims, when viewed in light of its SEC filings and press releases, fail to state a claim and should be dismissed.**

As a publicly traded company, all of Vantage's material transactions ("Transactions") must be publicly disclosed. *See, e.g.*, 17 C.F.R. § 229.404(a); NYSE MKT Rules 401(a), 402. In its lawsuit, Vantage claims that it has <u>known</u> of, and therefore been on legal notice of, the alleged fraud and misconduct since August 29, 2008. Compl. ¶ 19. Yet even a cursory review of Vantage's public filings establishes, as a matter of law, that Vantage was fully familiar with the terms of each Transaction upon which it now complains, fully vetted the fairness of those Transactions before entering into them, and expressly reported to the regulators and its shareholders that the Transactions were fair to Vantage.[1]

Not only did Vantage determine the Transactions were fair to Vantage, Vantage reported that, based on its review and consultation with experts, the Transactions were in the best interest of Vantage.[2] The Transactions were approved by Vantage's Board of Directors without dissent.[3]

---

[1] In ruling on a 12(b)(6) motion to dismiss, the court may consider "public disclosure documents required by law to be, and that have been, filed with the SEC, and documents that the plaintiffs either possessed or knew about and upon which they relied in bringing the suit." *Fin. Acquisition Partners LP v. Blackwell*, 440 F.3d 278, 286 (5th Cir. 2006) (citations omitted); *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 127 S. Ct. 2499, 2509 (2007) ("Courts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling of Rule 12(b)(6) motion to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.").

[2] *See, e.g.*, Ex. 1, Nov. 14, 2008 10-Q, p. 13 ("Management engaged in multiple discussions regarding financing alternatives with banks, investment funds and potential strategic and financial partners and communicated the results of these discussions to the special committee..."); Ex. 2, Nov. 9, 2010 10-Q, p. 12 ("[W]e reviewed the evaluation work of the investment bank retained by our Board of Directors to prove the fairness of the transaction."); Ex. 3, Nov. 12, 2010 DEF 14A, p. 45 ("[T]he Special Committee received a fairness opinion from Parks Paton Hoepfl & Brown, LLC, regarding the fairness of the transactions to our disinterested shareholders."); Ex. 4, Mar. 20, 2012 Press Release, attached to Mar. 21, 2012 8-K as Ex. 99.1 ("FBR Capital Markets provided a fairness opinion with respect to this transaction...").

[3] *See* Ex. 5, Apr. 30, 2012 10-K/A, p. 23-25; *Id*. ("All of the transactions set forth below were approved by the unanimous vote of the Board of Directors..."); Ex. 6, "Certain Relationship and Related Party Transactions," attached to July 20, 2010 8-K as Ex. 99.9 (same).

For example, in March 2009, F3 Capital, a Su-controlled company, made an unsecured loan to Vantage to raise working capital. Although Vantage now complains that it was not able to raise capital because of Su's allegedly wrongful conduct (*see* Compl. ¶¶ 25, 36), it told the SEC and the public that its inability to obtain financing was "due to unforeseen difficulties in the global debt and equity markets in the second half of 2008 and early 2009." Ex. 7, Nov. 23, 2009, DEF 14-A, p. 18.[4] Unable to raise funds in the public market on acceptable terms, Vantage turned to Mr. Su for financing. The terms of the financing were fully vetted and found to be acceptable to Vantage:

> [A] special committee, consisting solely of independent directors was formed to evaluate, and approve, financing arrangements with F3 Capital and/or its affiliates . . . The following transactions were approved by the special committee and our Board of Directors.

*Id*. (emphasis added).

Similarly, on July 10, 2010, Vantage announced that it had entered into an agreement to acquire F3 Capital's remaining interest in Mandarin Drilling Corporation. Although Vantage now complains about the unfairness of the transaction, at the time, the transaction was fully vetted and found to be not only "fair," but a "bargain" that Vantage was "excited" to acquire:

> "We are excited to acquire full ownership of the *Platinum Explorer* as we continue to build one of the most modern and technologically advanced offshore drilling rig fleets in the world."

Ex. 8, Jul. 7, 2010 Press Release, attached to Jul. 7, 2010 8-K as Ex. 99.2 (quote from Vantage President and CEO Paul Bragg). And in its 10-Q, Vantage stated that:

> we reviewed the evaluation work of the investment bank retained by our Board of Directors to prove the fairness of the transaction. Based on our initial assessment of the transaction, we determined that the transaction constituted a **bargain purchase** resulting in a $12.3 million gain on the transaction.

---

[4] *See also* Ex. 1, Nov. 14, 2008 10-Q, pp. 12-13 ("The Company initiated a process to obtain both debt and equity financing for this payment [for the *Platinum Explorer*]. However, due to significant unforeseen difficulties in the global debt and equity markets, the Company was not able to complete these funding efforts.").

Ex. 2, Nov. 9, 2010 10-Q, p. 12 (emphasis added).

Indeed, all of Vantage's newly minted claims about discovering Su's alleged misconduct and fraud in August 2008 are belied by Vantage's own public filings—filings made <u>after</u> Vantage alleges here that it had discovered Su's fraud. For example, when Su resigned from the Vantage Board effective April 14, 2011, Vantage effusively praised Su for his service and support. Specifically, Vantage had this to say in 2011, three years after it says it discovered the fraud it alleges here:

> "I would like to thank Nobu Su for his service on the Board since June 2008, when Vantage acquired its current five drilling rigs, all of which were then just under construction. <u>With the support of Nobu, we were able to expand rapidly from start up with about $275 million in assets, to full operations with approximately $2 billion in assets today.</u> In the past few months, F3 Capital initiated the replacement of two of its internal Board representatives with new, independent, industry-experienced Board members. Our Board has evolved from its initial, sponsor-heavy composition, into an independent group with both experience and industry expertise to provide sound governance and fiduciary oversight on behalf of all of our shareholders."

Ex. 9, Apr. 18, 2011 Vantage Press Release, attached to Apr. 20, 2011 8-K as Ex. 99.1 (quote from Vantage's President and CEO).

Vantage continued doing business with Su's companies after Su's resignation from Vantage's Board. For example, Vantage now complains about the unfairness of the terms of its acquisition of the Titanium Explorer. *See* Compl. ¶¶ 51-56. Again, even a cursory review of Vantage's public filings reveals that prior to entering into that transaction, Vantage sought and obtained expert advice on the fairness of the transaction to Vantage: "FBR Capital Markets provided <u>a fairness opinion with respect to this transaction</u> to the Audit Committee of our Board of Directors," and quoting Mr. Bragg as stating that "[w]e are excited to acquire the *Dragonquest* [subsequently renamed the *Titanium Explorer*] . . . we have the highest confidence in the quality and capabilities of the asset we are buying." Ex. 4, Mar. 20, 2012 Press Release, attached to Mar.

21, 2012 8-K as Ex. 99.1 (emphasis added). And again, in an April 20, 2012 Press Release, Vantage expressed its gratitude to Su's company, F3 Capital:

> "We are extremely pleased to announce the completion of the acquisition of the Titanium Explorer. . . . We appreciate the support of F3 Capital in concluding these efforts."

Ex. 10, Apr. 20, 2012 Press Release, attached to Apr. 23, 2012 8-K as Ex. 99.1 (quote from Vantage's President and CEO).

A more detailed review of Vantage's public filings reflects that at <u>no</u> point in time prior to the preparation of this lawsuit did Vantage ever suggest to its shareholders that it had been the victim of fraud or other malfeasance, or that Vantage had done anything other than negotiate transactions with Su's companies that were expressly determined to be fair to Vantage. According to Vantage's May 14, 2012 press release, merely three months before filing a lawsuit against Su, the transactions with Su's companies put Vantage in a better position than at any time in its history. According to Vantage's President and CEO:

> "We continued our strong operating performance during the quarter. And importantly, we have now completed the acquisition and delivery of our third drillship, Titanium Explorer, which is now en-route to the US Gulf of Mexico. <u>We feel that we are in a better position today than at any point in our history</u>."

Ex. 11, May 10, 2012 Press Release, attached to May 14, 2012 8-K as Ex. 99.1. Further, there is nothing to indicate that Vantage was harmed in any way by its business dealings with Su.

According to Vantage, its transactions with Su's companies were fully vetted, determined to be in Vantage's best interests, and put the Company in a better position than at any point in its history. As the Court has noted from its review of the claims, "It can't have been fraud because Vantage is a bunch of grownups who have lawyers, accountants, investment bankers and engineers, and they made a business decision. . . ." Dkt. No. 29, Mar. 11, 2013 Hearing Tr. at

5

23:22-25.[5] Indeed, according to Vantage's own statements, Vantage's business decisions clearly benefited the Company.

## B. Vantage's non-fraud claims should be dismissed pursuant to its Articles of Association.

Su was a member of the Vantage Board of Directors from June 12, 2008 to April 14, 2011. Compl. ¶ 5. Vantage's Articles of Association[6] protect Vantage Directors from liability to the Company for allegedly wrongful actions except for fraud or willful default:

> Every Director or officer of the Company shall be indemnified out of the assets of the Company against any liability incurred by him as a result of any act or failure to act in carrying out his functions other than such liability (if any) that he may incur by his own actual fraud or wilful default. No such director or officer shall be liable to the Company for any loss or damage in carrying out his functions unless that liability arises through the actual fraud or wilful default of such Director or officer. References in this Article to actual fraud or wilful default mean a finding to such effect by a competent court in relation to the conduct of the relevant party.

Ex. 12, Amended and Restated Memorandum and Articles of Association of Vantage Drilling Company, Art. 170, attached to Dec. 28, 2009 8-K as Ex. 3.1. Therefore, Vantage's claims for negligent misrepresentation, breach of fiduciary duty, and unjust enrichment, must also be dismissed pursuant to Vantage's own Articles of Association.

---

[5] *See also id.* at 25:14-17 (J. Hughes) ("I do have some concerns—that's not a ruling—about making deals, revising deals, making deals, revising deals, and then coming back several years later and deciding you were defrauded.").

[6] Articles of incorporation and similar corporate documents are properly considered by the Court when deciding a 12(b)(6) motion to dismiss. *Fin. Acquisition Partners LP v. Blackwell*, 440 F.3d 278, 286 (5th Cir. 2006) (holding "public disclosure documents required by law to be, and that have been, filed with the SEC" may be considered at the 12(b)(6) stage); *see also Hammond v. St. Francis Med. Ctr.*, No. 06–101, 2006 WL 1675407, at *1 (W.D. La. Apr. 21, 2006) (considering articles of incorporation on file with the Secretary of State's office in connection with a non-securities 12(b)(6) motion to dismiss).

**C.** **Vantage's breach of fiduciary duty claim should be dismissed because Plaintiff fails to allege any causation.**

Each of Plaintiff's transactions with Mr. Su's companies was approved by Vantage's board of directors without dissent. Vantage does not even attempt to allege that any different vote at any time by Mr. Su would have changed Vantage's decision on any transaction.

In addition, Plaintiff's breach of fiduciary duty claim is simply illogical. Review of the public filings reflects that the transactions were fully vetted and approved by Vantage's Board of Directors without dissent. A finding of a breach of fiduciary duty by Mr. Su would require a finding of breach by <u>all</u> the Directors—as the Court pointed out, the other Directors "also have fiduciary duties, and rolling over, because it is easier, is not meeting their fiduciary duties." Mar. 11, 2013 Hearing Tr. at 24:7-10. Such a claim would be both illogical and legally barred by *in pari delicto*. *See, e.g., Jones v. Wells Fargo Bank*, 666 F.3d 955, 965 (5th Cir. 2012) (*In pari delicto* is applicable where a plaintiff, as a result of its own actions, bears at least substantially equal responsibility for the underlying wrongdoing of which it is complaining.).

**D.** **Vantage's unjust enrichment claim should be dismissed because Vantage has an adequate remedy at law.**

Under Texas law,[7] a claim for unjust enrichment is an equitable claim, and is unavailable where the plaintiff has an adequate legal remedy. *See BMG Direct Mktg., Inc. v. Peake*, 178 S.W.3d 763, 770 (Tex. 2005). "An adequate remedy at law is one that is as complete, practical, and efficient to the prompt administration of justice as is equitable relief." *Intercontinental*

---

[7] Vantage asserts that "the law of the Cayman Islands will govern Su's duties in his capacity as a Vantage director." Compl. ¶ 57. It is unclear whether Vantage asserts that Cayman law applies to all of its claims or just the breach of fiduciary duty claims. In any event, in the Fifth Circuit, a party seeking the application of a foreign law bears the burden of establishing the contents of the foreign law, and when this burden has not been met, the court is "entitled to look to its own forum's law in order to fill in any gaps." *Banco de Credito Indus., S.A. v. Tesoreria Gen.*, 990 F.2d 827, 836 (5th Cir. 1993). Su does not address the choice of law issue at this time, and reserves the right to do so if necessary in the future. In the meantime, Vantage has provided <u>some</u> Cayman law with respect to fiduciary duties, but has provided <u>no</u> Cayman law regarding its other claims. Thus, to the extent the Court provides credence to Vantage's selective reliance on Cayman law, it should still apply the law of the forum to fill in the gaps.

*Terminals Co., LLC v. Vopak N. Am., Inc.,* 354 S.W.3d 887, 895 (Tex. App.—Houston [1st Dist.] 2011, no pet.) (citations omitted). Vantage seeks the same remedy in its unjust enrichment claim that it seeks in its other claims, specifically a constructive trust for all profits and benefits, direct or indirect, received by Su as a result of Su's alleged misconduct. *See* Compl. ¶¶ 62-65, 68. This Court should thus dismiss the unjust enrichment claim.

E.  **Vantage's claims for negligent misrepresentation and unjust enrichment are time-barred.**

A statute of limitations supports dismissal under Rule 12(b)(6) where it is evident from the plaintiff's pleadings that the action is barred and the pleadings raise no basis for tolling or the like. *Jones v. Alcoa, Inc.*, 339 F.3d 359, 366 (5th Cir. 2003).

The statute of limitations in Texas for negligent misrepresentation is two years, and Vantage's claims for negligent misrepresentation and unjust enrichment are thus time barred by the factual admissions in Vantage's own Complaint. Tex. Civ. Prac. & Rem. Code § 16.003(a); *TIG Ins. Co. v. Aon Re, Inc.*, 521 F.3d 351, 354-55 (5th Cir. 2008). Vantage filed its Complaint on August 21, 2012—well more than two years after Vantage says the alleged representations occurred, and after it admits it actually discovered them.[8] Vantage says that it:

- Discovered Su's alleged misrepresentations regarding the payment terms of the construction contract with DSME for the *Platinum Explorer* on August 29, 2008. Compl. ¶ 19.

- Discovered Su's alleged misrepresentations regarding the due date of a $32 million installment owed on the *Platinum Explorer* on November 18, 2008. Compl. ¶ 31.

---

[8] The Fifth Circuit has previously held that the discovery rule does not apply to negligent misrepresentation claims under Texas law. *Kansa Reinsurance Co., Ltd. v. Cong. Mortgage Corp. of Texas*, 20 F.3d 1362, 1372-73 (5th Cir. 1994). However, this holding has been questioned in subsequent decisions from Texas courts. *See Sabine Towing & Transp. Co. v. Holliday Ins. Agency, Inc.,* 54 S.W.3d 57, 61 (Tex. App.—Texarkana 2001, pet. denied). Given Vantage's admissions, the discovery rule issue appears to be irrelevant here; however, if the Court would like further briefing on the issue, Su will be happy to provide whatever additional detail the Court wishes to see.

- Discovered Su's alleged misrepresentations regarding his ability and intent to pay ongoing development costs under the *Platform Explorer* joint venture <u>no later than</u> July 7, 2010. Compl. ¶ 43-46.

- Discovered Su's alleged misrepresentations regarding the *Titanium Explorer* agreements beginning in 2010. Compl. ¶ 54.

The statute of limitations for unjust enrichment is also two years. Tex. Civ. Prac. & Rem. Code Ann. § 16.003(a); *Elledge v. Friberg-Cooper Water Supply Corp.,* 240 S.W.3d 869, 871 (Tex. 2007). Although Vantage's complaint is vague as to exactly what alleged "unlawful conduct" unjustly enriched Su and how, these claims arise out of the same alleged conduct that forms the basis of Vantage's negligent misrepresentation claims. *See* Compl. ¶ 68. Because all of this alleged conduct and any resulting alleged enrichment occurred and was known by Vantage more than two years before it filed its Complaint, Vantage's claims for unjust enrichment are time-barred as well.

**F.     Vantage's fraud, fraudulent inducement, and negligent misrepresentation claims should be dismissed under Rule 9(b).**

Fed. R. Civ. P. 9(b) imposes a heightened pleading standard in which a party must state with particularity the circumstances constituting the alleged fraud, including stating specifically allegations on "the who, what, when, where, and how" in order to state a claim for fraud. *Benchmark Elecs., Inc. v. J.M. Huber Corp*, 343 F.3d 719, 724 (5th Cir. 2003). The Fifth Circuit also applies this heightened pleading requirement to negligent misrepresentation claims where the claims are not "urged with a separate focus" and are based on the "same set of alleged facts" as the plaintiff's fraud claims. *Id.* at 723. Because Vantage does not distinguish its negligent misrepresentation claims from its fraud claims, *see* Compl. ¶¶ 66-67, Rule 9(b) applies to Vantage's negligent misrepresentation claims as well as its fraud and fraudulent inducement claims.

9

Plaintiff's pleadings in support of its fraud, fraudulent inducement, and negligent misrepresentation claims utterly fail to meet the standard set by Rule 9(b). Vantage's Complaint:

- Never identifies <u>any</u> particular representative of Vantage to whom Su made any alleged misrepresentation;

- Provides virtually no details what the specific alleged misrepresentations were, in general simply asserting that "Su represented" certain things "to Vantage." *See* Compl. ¶¶ 14, 21, 26, 39;

- Nowhere alleges where or how Su made any misrepresentation; and

- Only once provides <u>any</u> detail about when <u>any</u> of the myriad of alleged misrepresentations occurred.[9]

Ordinarily, Vantage would be given a chance to amend its pleadings to fix these shortcomings. However, Vantage has already been given such an opportunity, and rejected the offer, telling the Court on the record that it has no intention of amending its pleadings.[10] These claims should therefore be dismissed with prejudice.

---

[9] Vantage alleges that "on or about September 8, 2008" Su misrepresented the due date and immediate need of a $32 million installment payment on the *Platinum Explorer*. Compl. ¶ 26. Vantage provides only the most general of timeframes regarding other alleged misrepresentations, the most specific of these identifying representations allegedly made "repeatedly" throughout 2007 and 2008. Compl. ¶ 21.

[10] Apr. 4, 2013 Hearing Tr., p. 23:15-24:4 (discussion of briefing scheduling on motion to dismiss):

> Mr. Manela: The only footnote to that request, Your Honor, is if Vantage was interested in amending its pleading . . . . it seems to me efficiency would suggest to do that now and we'll respond to whatever the pleading is. But we'll proceed however Your Honor prefers.
>
> Mr. Gibbs: We're not going to be amending it, Your Honor.
>
> The Court: I already read it. That's my objections to your amending. But, if you want to amend, now would be a good time to do it.
>
> Mr. Gibbs: I don't think we intend to amend.
>
> The Court: Okay. So, Su will move Tuesday, May 30.

Respectfully Submitted,

By: */s/ Mark D. Manela*
   Mark D. Manela
   State Bar No. 12894500
   Southern District No. 1821
   MAYER BROWN, LLP
   700 Louisiana, Suite 3400
   Houston, Texas 77002-2730
   Tel. (713) 238-3000
   Fax (713) 238-4888
   mmanela@mayerbrown.com

   ATTORNEY-IN-CHARGE FOR
   DEFENDANT HSIN-CHI-SU
   A/K/A NOBU SU

OF COUNSEL:

Jessica L. Crutcher
State Bar No. 24055367
Southern District No. 675607
MAYER BROWN, LLP
700 Louisiana, Suite 3400
Houston, Texas 77002-2730
Tel. (713) 238-3000
Fax (713) 238-4888
jcrutcher@mayerbrown.com

Ralph D. McBride
State Bar No. 13332400
Southern District No. 0818
Bryan S. Dumesnil
State Bar No. 00793650
Southern District No. 20999
Bradley J. Benoit
State Bar No. 24012275
Southern District No. 24495
Phillip L. Sampson
State Bar No. 00788344
Southern District No. 16837
BRACEWELL & GIULIANI LLP
711 Louisiana St., Suite 2300
Houston, Texas 77002-2770
(713) 223-2300 Telephone
(713) 221-1212 Facsimile

## CERTIFICATE OF SERVICE

I certify that on April 30, 2013, I electronically filed the foregoing Motion to Dismiss with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record who have consented to electronic notification:

Robin C. Gibbs
David Sheeren
Gibbs & Bruns, LLP
1100 Louisiana, Ste. 5300
Houston, TX 77002

Richard W. Mithoff
Sherie P. Beckman
Warner Hocker
Mithoff Law Firm
500 Dallas St., Ste. 3450
Houston, TX 77002

Vidal Gregory Martinez
Martinez Partners LLP
One Riverway, Suite 1700
Houston, Texas  77056

Julian Fertitta, III
Grimes Fertitta PC
440 Louisiana, Suite 1818
Houston, Texas  77002

*/s/ Jessica L. Crutcher*
Jessica L. Crutcher

706425560.2