UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| VANTAGE DRILLING COMPANY, | § | |
| | § | |
| PLAINTIFF, | § | |
| | § | CIVIL ACTION 4-12-CV-03131 |
| versus | § | |
| | § | |
| HSIN-CHI-SU, AKA NOBU SU, | § | |
| | § | |
| DEFENDANT. | § | |

**VANTAGE DRILLING COMPANY'S
SURREPLY IN OPPOSITION TO SU'S REPLY TO
VANTAGE'S RESPONSE TO SU'S MOTION TO DISMISS**

A. **Vantage's Complaint Easily Meets the Pleading Standard Set Out in *Ashcroft v. Iqbal* and *Bell Atlantic v. Twombly*.**

Faced with well-established law holding that affirmative defenses and factual disputes are not ripe for adjudication on a motion to dismiss, Su asserts in his June 13 reply, for the first time, that Vantage's allegations are instead "implausible" under the pleading standard set out in *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). *See* Reply at 1-3, 6-9. Su's new legal defense of "implausibility," however, again asks the Court to resolve factual disputes before discovery has even commenced, and to rule on affirmative defenses before they have even been pled. In other words, Su treated his June 13 reply not as a reply to Vantage's May 30 response, but instead as a "second bite" at the motion to dismiss apple.[1]

What's more, Su's new *Twombly* and *Iqbal* arguments either completely ignore the detailed factual allegations in Vantage's complaint, or ask the Court to disregard the long-

---

[1] On June 4, 2013, Su filed a motion for leave "to file a Reply to address the legal arguments and factual mischaracterizations in Vantage's [May 30, 2013] response brief." He notably did not request leave to amend his April 30, 2013 Motion to Dismiss.

1

standing rule that on a motion to dismiss, "well-pleaded facts <u>are assumed true</u> and are viewed in the light most favorable to the plaintiff." *Shandong Yinguang Chemical Industries Joint Stock Co., Ltd. v. Potter*, 607 F.3d 1029, 1032 (5th Cir. 2010) (emphasis added).

In any event, under *Twombly*, a complaint survives a motion to dismiss if it contains "enough facts to state a claim to relief that is plausible on its face." 550 U.S. at 570 (internal quotation omitted). Under *Iqbal*, a plaintiff meets this standard when it "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 550 U.S. at 678. In *Iqbal*, the Court explained that a mere "formulaic recitation of the elements" of a claim is insufficient to create a well-pleaded complaint. *Id.* at 698. "Thus, it was not enough in *Twombly* to allege a 'conspiracy,' or in *Iqbal* to parrot the words needed to create a claim of constitutional discrimination." *Gulf Coast Hotel-Motel Assoc. v. Miss. Gulf Coast Golf Course Assoc.*, 658 F.3d 500, 506 (5th Cir. 2011) (internal citation omitted).

Here, Vantage's 25-page complaint goes far beyond a mere "formulaic recitation of the elements" of its claims, *see Iqbal* at 698. The level of detail provided in Vantage's complaint, which is summarized at pages 7, 9-10, 14, and 18-19 of Vantage's May 30, 2013 response, clearly gives rise to a "reasonable inference" that Su violated his fiduciary duties of strict loyalty and good faith to Vantage, *see Iqbal* at 678. Not only did Vantage's allegations describe a long-term <u>pattern</u> of dishonest and bad faith conduct, they also identified <u>specific instances</u> of such dishonest and bad faith conduct.

To cite just one example,[2] paragraphs 21 through 25 of Vantage's complaint describe in detail a very specific misrepresentation that Su repeatedly made to Vantage, and then repeatedly

---

[2] Vantage will not burden the Court by repeating its 25-page complaint in full. This example is illustrative of the detail provided throughout Vantage's complaint.

2

failed to correct: In order to induce Vantage to acquire his construction contract with the DSME shipyard, Su represented to Vantage's board and management team that the terms of his contract with DSME required a 30% down payment, which he further represented he had already caused to be paid. In fact, he knew the contract required four 5% installments, not a single 30% down payment, which in fact had <u>not</u> already been paid. As Vantage's complaint describes, Su did not disclose the true terms of the contract until late 2008, several months after he joined Vantage's board of directors. Therefore, Su told a lie, and then he perpetuated it.[3] The complaint goes on to describe how that last-minute revelation scuttled a major bond financing of the contemplated transaction, and forced Vantage to enter into a less favorable joint venture with Su.

With respect to this transaction, then, the sole question before the Court at the motion to dismiss stage is whether, viewing the facts in the light most favorable to Vantage, Vantage's complaint includes enough facts to state a breach of fiduciary duty claim that is "plausible" on its face. *Twombly* at 570. Of course it does: Vantage's complaint specifically alleges that while Su sat on Vantage's board of directors, he lied to management and the board about the key terms of a major contract that Su hoped to sell to Vantage. It is difficult to imagine a more <u>self-evident</u> breach of a director's fiduciary duties of loyalty, good faith, and candor, much less a "plausible" one.

Furthermore, Su's references to Vantage's securities disclosures do not render Vantage's claims any less plausible. To be clear, Vantage's securities disclosures and press releases were accurate. The mere fact, however, that Vantage thanked Su for his time on Vantage's board of directors (a statement that Su, himself, helped to draft), does not somehow rewrite history, or cleanse Su from all liability for breaching his fiduciary duties to Vantage. And, as set out on

---

[3] Su argues in his June 13 reply that Su did not owe any fiduciary duties to Vantage until June 12, 2008. *See* Reply at 6. This argument, though meritless on its face, ignores the fact that Su's fiduciary duties of good faith and candor required Su to correct his lies as soon as he became a board member. He did not.

pages 12-13 of Vantage's May 30 response, Vantage's securities disclosures also <u>repeatedly disclosed</u> the broader context of Su's dealings with Vantage, including the fact that he perpetually fell behind on construction and management payments.  As a whole, Vantage's securities disclosures actually make Vantage's claims against Su more plausible, not less.

### B. <u>Independent Committee Approval Cannot Cleanse Su's Disloyal Conduct</u>.

Su argues for the first time in his reply that the approval of particular transactions by independent directors somehow relieves Su from liability for lying to Vantage and breaching his fiduciary duties, or shifts the burden of persuasion to Vantage to prove the entire fairness of the underlying transactions.  Su is wrong on both accounts.  In any event, the actual fairness of the transactions is undoubtedly a hotly contested factual question not ripe for resolution on Su's motion to dismiss.

As set out in Vantage's May 30 response, board approvals cannot relieve a defaulting fiduciary from liability for dishonesty or fraud.  So, whether Su presents his argument through the "plausibility" language of *Iqbal* and *Twombly*, or through the affirmative defense of ratification, the result is the same: Because special committee approvals are <u>incapable</u> of cleansing a director's disloyal acts, such approvals necessarily cannot render a breach of fiduciary duty claim any less plausible.  *See, e.g.*, *General Dynamics v. Torres*, 915 S.W.2d 45, 50 (Tex. App.—El Paso 1995) ("We believe it to be the rule in Texas that ratification is not available to condone a corporate officer or director's disloyalty or fraud."); *Tyco Int'l Ltd. v. Walsh*, 2012 WL 75365, *2 (2d Cir. 2012) (citing UK and Bermudan law and concluding "breach of duty which is dishonest and involves misappropriation of property from a company cannot be ratified").  That is especially true here, because Su repeatedly kept the independent board members in the dark about: (1) his true intention or ability to actually perform his contracts

4

with Vantage; (2) the true terms of his contracts with the shipyards, and (3) his long-term plan to <u>repeatedly</u> fail to perform his contracts as part of a scheme to force Vantage to re-negotiate new transactions, at terms less favorable to Vantage.

In addition, a determination of whether to shift the burden of persuasion back to a plaintiff to prove unfairness itself requires a "factually intensive" inquiry into the actual mechanics and circumstances surrounding the independent committees' review, including Su's lack of candor and full disclosure to the committees. *Americas Mining Corp. v. Theriault*, 51 A.3d 1213, 1242 (Del. 2012). In other words, burden shifting premised on independent board approvals is not a perfunctory exercise, but yet another inquiry into hotly disputed facts that is premature on a motion to dismiss. *See Orman v. Cullman*, 794 A.2d 5, 20 (Del. Ch. 2002) ("A determination of whether the defendant has met [his] burden [of showing burden shifting back to the plaintiff] will normally be impossible by examining only the documents the Court is free to consider on a motion to dismiss—the complaint and any documents it incorporates by reference.").

Finally, even if the burden were shifted back to Vantage to prove unfairness, which it is not, a fairness determination is premature on a motion to dismiss, where well-pleaded facts are assumed true and are viewed in the light most favorable to the plaintiff.

### C. **Vantage's Articles of Association Do Not Exculpate Su for Breach of Fiduciary Duty.**

Su concedes in his reply that Vantage's fraud claims are not barred by Vantage's Articles of Association. Reply at 5-6. Oddly, however, Su still argues that Vantage's breach of fiduciary duty and unjust enrichment claims, which are based on the <u>same underlying conduct</u> as the fraud claims, should be dismissed under the exculpation provision in the Articles of Association. Su is wrong on the law. If Su's misconduct gives rise to fraud claims not exculpated by the Articles of

Association, the same conduct necessarily constitutes a breach of fiduciary duty, because a fraud claim is premised on a misrepresentation or omission, which by definition violates a director's duty of strict loyalty and good faith.  Furthermore, as discussed at pages 16-17 of Vantage's May 30 response, the "willful default or fraud" threshold has been interpreted to disallow indemnification for all dishonest or bad faith acts, even if they fall short of "actual fraud."  And, to be clear, <u>each</u> of Vantage's claims is based on Su's dishonest and bad faith acts.  *See* Original Petition ¶¶ 60-68.

### D. Causation and Injury Are Not Required Where a Company Seeks Disgorgement or Restitutionary Relief From a Defaulting Fiduciary.

Su further argues that causation and injury are "both necessary prerequisites to the damages it seeks."  Reply at 8.  Su misstates the law.  It is well established that a beneficiary is not required to prove actual injury to recover from a defaulting fiduciary.  *Kinzbach Tool Co. v. Corbett-Wallace Corp.*, 138 Tex. 565 (Tex. 1942) ("A fiduciary cannot say to the one to whom he bears such relationship: You have sustained no loss by my misconduct in receiving a commission from a party opposite to you, and therefore you are without remedy . . . It is the law that in such instances if the fiduciary 'takes any gift, gratuity, or benefit in violation of his duty, or acquires any interest adverse to his principal, without a full disclosure, it is a betrayal of his trust and a breach of confidence, and he must account to his principal for all he has received.'").  The single case cited by Su for this proposition, *Si Kyu Kim v. Harstan, Ltd.*, 286 S.W.3d 629 (Tex. App.—El Paso 2009, pet. denied), is not on point, because the plaintiff in that case only sought actual damages, not restitutionary relief.  Here, in contrast, Vantage seeks to impose a constructive trust on the fruits of Su's disloyalty, including among other things his Vantage stock worth over $100 million, and the $60 million note issued to him by Vantage.

### E. Vantage Has Not Waived Its Ability to Amend Its Pleading.

Finally, Vantage briefly addresses Su's assertion that based on Counsel's comments at the April 4 hearing, Vantage "previously declined the opportunity to replead." Reply at 9. This argument is legally incorrect and inequitable in this context. At the time of the April 4 hearing, Vantage could not have predicted that Su would attempt to convert his motion to dismiss into a motion for summary judgment, or that he would interject several unpled affirmative defenses at this early stage. The narrow issue at that time was simply whether Vantage intended to re-plead before the motion to dismiss briefing began, not whether Vantage would waive all of its rights to seek leave to re-plead at any point in the future and for all purposes. "Whether leave to amend should be granted is entrusted to the sound discretion of the district court . . . ." *Quintanilla v. Texas Television, Inc.*, 139 F.3d 494, 499 (5th Cir. 1998). Federal Rule of Civil Procedure 15(a) requires the trial court to grant leave to amend "freely," and the language of this rule "evinces a bias in favor of granting leave to amend." *Chitimacha Tribe of La. v. Harry L. Laws Co., Inc.*, 690 F.2d 1157, 1163 (5th Cir. 1982); *see also Travels Indem. Co. v. Damman & Co.* 594 F.3d 238, 256 n.14 (3d Cir. 2010) (stating if a complaint is vulnerable to a 12(b)(6) dismissal, a district court must permit a curative amendment, unless an amendment would be inequitable or futile and noting that the rule applies even if the plaintiff does not seek leave to amend). Therefore, to be clear, Vantage has not waived, and does not intend to waive, its rights to request leave to re-plead.

### F. Conclusion

Su's effort to recast his initial motion to dismiss in the language of *Twombly* and *Iqbal* is meritless, and Vantage again respectfully requests that the Court deny Su's motion to dismiss.

Respectfully Submitted,

| | | |
|---|---|---|
| OF COUNSEL: | OF COUNSEL: | |
| By: */s/ Richard W. Mithoff* | By: */s/ Vidal G. Martinez* | By: */s/ Robin C. Gibbs* |
| Richard W. Mithoff | Vidal G. Martinez | Robin C. Gibbs |
| State Bar No. 14228500 | State Bar No. 13144650 | State Bar No. 07853000 |
| So. District No. 2102 | So. District No. 4190 | So. District No. 4790 |
| Sherie P. Beckman | **MARTINEZ PARTNERS LLP** | **GIBBS & BRUNS, LLP** |
| State Bar No. 16182400 | One Riverway | 1100 Louisiana |
| So. District No. 11098 | Suite 1700 | Suite 5300 |
| Warner V. Hocker | Houston, Texas 77056 | Houston, Texas 77002 |
| State Bar No. 24074422 | Telephone: 713-300-3850 | Telephone: 713-650-8805 |
| So. District No. 1133732 | Facsimile: 713-513-5546 | Facsimile: 713-750-0903 |
| **MITHOFF LAW FIRM** | | |
| 500 Dallas Street | | **ATTORNEY-IN-CHARGE FOR PLAINTIFF** |
| One Allen Center | | |
| Suite 3450 | | |
| Houston, TX 77002 | | |
| Telephone: 713-654-1122 | | |
| Facsimile: 713-739-8085 | | |

| | |
|---|---|
| OF COUNSEL: | OF COUNSEL: |
| Julian J. Fertitta, III | David Sheeren |
| State Bar No. 00795060 | State Bar No. 24079313 |
| So. District No. 21954 | So. District No. 1339705 |
| GRIMES & FERTITTA, P.C. | **GIBBS & BRUNS, LLP** |
| 440 Louisiana | 1100 Louisiana |
| Suite 1818 | Suite 5300 |
| Houston, Texas 77002 | Houston, Texas 77002 |
| Telephone: 713-224-7644 | Telephone: 713-650-8805 |
| Facsimile: 713-224-0733 | Facsimile: 713-750-0903 |

## **CERTIFICATE OF SERVICE**

       I hereby certify that a true and correct copy of the foregoing document was served on all counsel via Electronic filing and/or U.S. mail, pursuant to the Federal Rules of Civil Procedure and the Southern District's Local Rules, on this the 24th day of June, 2013:

*Via U.S. Mail and Email*
Mark D. Manela
mmanela@mayerbrown.com
Jessica Crutcher
jcrutcher@mayerbrown.com
**Mayer Brown, LLP**
700 Louisiana, Suite 3400
Houston, Texas 77002-2730


  */s/ David Sheeren*
David Sheeren